## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION AT DAYTON

| | | |
|---|---|---|
| RITA BISHOP, | : | |
| Plaintiff, | : | Case No.  3:08cv00375 |
| vs. | : | District Judge Thomas M. Rose<br>Magistrate Judge Sharon L. Ovington |
| MICHAEL J. ASTRUE,<br>Commissioner of the Social<br>Security Administration, | : | |
| | : | |
| Defendant. | : | |

## REPORT AND RECOMMENDATIONS [1]

### I.        INTRODUCTION

The Equal Access to Justice Act (EAJA) requires the Government to pay a
prevailing Social Security plaintiff's attorney fees "unless the court finds that the position
of the United States was substantially justified or that special circumstances make an
award unjust."  28 U.S.C. §2412 (d)(1)(A); *see Marshall v. Commissioner of Soc. Sec.*,
444 F.3d 837, 840 (6th Cir. 2006).  The parties in the instant case dispute whether the
Government must pay Plaintiff Rita Bishop's attorney fees under the EAJA.  (Doc. #s 15-
18).

---

[1]  Attached hereto is a NOTICE to the parties regarding objections to this Report and
Recommendations.

**II.     BACKGROUND**

The Court previously determined in this case that an Administrative Law Judge (ALJ) had made certain errors in his review of the medical source opinions of record and that those errors were not harmless.  As a result, the Court vacated the ALJ's non-disability determination and remanded this matter to the Social Security Administration under sentence four of 42 U.S.C. §405(g) for further proceedings.  (Doc. #s 12-14).

Plaintiff presently seeks an EAJA award in the total amount of $3,849.05 for work her counsel performed in this Court.  She contends that such an award is warranted because the Government's support of the ALJ's non-disability decision was unreasonable.

The Government argues that its support for the ALJ's decision was reasonable and was substantially justified because (1) the ALJ's decision to discount Dr. Smith's opinions was substantially justified, (2) the ALJ's decision to credit Dr. McCloud's assessment was reasonable and substantially justified; (3) the ALJ's assessment of Plaintiff's mental residual functional capacity was properly supported by the ALJ's explanation and by evidence of record, and (4) the ALJ correctly assessed Plaintiff as able to perform medium exertional work.

**III.    DISCUSSION**

   **A.      <u>The EAJA and "Substantial Justification"</u>**

A position is "substantially (*i.e.*, for the most part) justified..." under the EAJA when it is "'justified in substance or in the main' – that is, justified to a degree that could

2

satisfy a reasonable person." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988); *see*

*Howard v. Barnhart*, 376 F.3d 551, 554 (6th Cir. 2004). "Stated otherwise, a position is

substantially justified when it has a 'a reasonable basis in law and fact.'" *Howard*, 376

F.3d at 554 (quoting, in part, *Pierce*, 487 U.S. at 566 n.2). Yet, the conclusion that the

ALJ's or the Commissioner's non-disability decision "was unsupported by substantial

evidence does not foreclose the possibility that the position was substantially justified....

Indeed, 'Congress did not ... want the 'substantially justified' standard to be 'read to raise

a presumption that the Government position was not substantially justified simply

because it lost the case....'" *Howard*, 376 F.3d at 554 (citations omitted); *see Pierce*, 487

U.S. at 566 n.2.

　　　　The EAJA places the burden on the Government to demonstrate that its position

was substantially justified. *See Healey v. Leavitt*, 485 F.3d 63, 67 (2nd Cir. 2007); *see*

*also Hackett v. Barnhart*, 475 F.3d 1166, 1169 (10th Cir. 2007)(courts have "uniformly

recognized" that this burden "must be shouldered by the Government.").[2]

## B.　　<u>Analysis</u>

　　　　A review of the ALJ's decision and the Commissioner's Memorandum in

Opposition (Doc. #11) to Plaintiff's Statement of Errors reveals that the Commissioner

unreasonably overlooked the ALJ's failure to apply the correct legal criteria when

---

[2] *Conrad v. Barnhart*, 434 F.3d 987, 990 (7th Cir. 2006); *Goad v. Barnhart*, 398 F.3d 1021, 1025 (8th Cir. 2005); *Gutierrez v. Barnhart*, 274 F.3d 1255, 1258 (9th Cir. 2001); *Lively v. Bowen*, 858 F.2d 177, 180 (4th Cir. 1988).

rejecting the opinions of Dr. Smith, her long-time treating psychiatrist, and when

accepting the opinions of Dr. Padamadan, a one-time examiner, and Dr. McCloud, a non-

examining physician.  The prior explanation of this (in the Report and Recommendations)

bears repeating and likewise establishes that the Commissioner's present search for

substantial justification lacks merit:

> "Conspicuously absent from the ALJ's analysis is any direct
> reference to the treating physician rule, or to the applicable regulations and
> related case law regarding evaluation of medical source opinions.  While
> the ALJ's comments that Dr. Smith's opinion 'is not well supported' and 'is
> inconsistent with other substantial evidence' (*see id*. [Tr. 22]) do track the
> factors under the treating physician rule and thus serve obliquely to support
> that rule's inapplicability here, *see* 20 C.F.R. § 404.1527(d)(2); *Rogers*, 486
> F.3d at 242; *Wilson*, 378 F.3d at 544, the ALJ has provided no similar
> implicit nods to the regulatory requirements from which this Court may
> infer that he also discharged his obligation to then consider a 'host of other
> factors.'  *See id.*  Among those enumerated 'other factors' – *i.e.*, 'the length,
> frequency, nature, and extent of the treatment relationship; the
> supportability and consistency of the physician's conclusions; the
> specialization of the physician; and any other relevant factors' – the ALJ
> appears to invoke only the 'extent of the treatment relationship,' noting that
> Dr. Smith personally saw Plaintiff 'only twice.'  (Tr. 22).  He does not
> explain why he deems Dr. Smith's opinion based on two personal
> encounters with Plaintiff, plus her clinic's four-year history of treating
> Plaintiff, less reliable than Dr. Padamadan's opinion based on a single
> examination or Dr. McCloud's opinion based solely on a review of other
> doctors' findings.  While the ALJ emphasizes Dr. McCloud's 'specialized
> expertise in orthopedic medicine' (Tr. 21), he neglects even to mention Dr.
> Smith's specialization or that of other treating physicians on whose findings
> Dr. Smith presumably relied – for example, Dr. Stevens, a rheumatologist to
> whom Plaintiff was referred for testing and whose objective findings
> substantiate her arthritic problems.  (*See* Tr. 198).
>
> Moreover, ALJ Padilla failed to acknowledge that timeliness may
> constitute another 'relevant factor' that should be considered in determining
> the persuasiveness of differing medical source opinions.  Given the
> progressive nature of rheumatoid arthritis, Dr. Smith's June 2007 opinion

regarding Plaintiff's work-related limitations arguably could have represented a more accurate depiction of Plaintiff's abilities at the time of the September 2007 hearing than would Dr. Padamadan's December 2004 opinion or Dr. McCloud's January 2005 opinion. Yet in choosing to place greater reliance on those earlier opinions, the ALJ ignored the fact that both non-treating physicians' opinions antedated treating physician Dr. Smith's opinion by more than two and one-half years.

In light of these omissions, the ALJ does not appear to have complied with the Commissioner's own procedural constraints regarding the evaluation of medical source opinion. Courts 'require some indication that the ALJ at least considered [such] facts before giving greater weight to a [non-treating physician's] opinion.' *Blakley v. Comm'r of Soc. Sec.*, [581 F.3d 399, 409] (6th Cir. Sept. 24, 2009) (citing *Fisk v. Astrue*, 253 Fed. Appx. 580, 585 (6th Cir. 2007)). Again,

> [w]hen the treating physician's opinion is not controlling, the ALJ, in determining how much weight is appropriate, must consider a host of factors, including the length, frequency, nature, and extent of the treatment relationship; the supportability and consistency of the physician's conclusions; the specialization of the physician; and any other relevant factors . . . However, **in all cases there remains a presumption, albeit a rebuttable one, that the opinion of a treating physician is entitled to great deference, its non-controlling status notwithstanding** . . .

*Rogers*, 486 F.3d at 242 (emphasis added) (citation omitted); *see also* Social Security Ruling 96-2p, 1996 WL 374188, at *4. The Sixth Circuit recently issued a 'modest reminder' reaffirming the importance of that continued weighing. *See Blakley*, [581 F.3d at 410]. A review of Dr. Smith's opinion does not reveal it to be 'so patently deficient that the Commissioner could not possibly credit' them. *Wilson*, 378 F.3d at 547. In addition, as detailed by Plaintiff, the record does contain some objective medical evidence lending ... support [to] that opinion. (*See* Doc. #8 at 14-15). Consequently, the ALJ's errors in handling that opinion were not harmless, *see Bowen*, 478 F.3d at 747-48; *Wilson*, 378 F.3d at 546-47, and Plaintiff's challenge to the ALJ's evaluation of the medical source opinions is well taken."

(Doc. #12 at 23-26)(bold in Report).

5

The Government's contention the ALJ's evaluation of the medical source opinions was substantially justified overlooks or ignored the readily discernable error of law committed by the ALJ.  For example, as explained above, the ALJ erred by not continuing to weigh the opinions of Dr. Smith, Plaintiff's treating medical source, as required by the Regulations, Rulings, and case law, see 20 C.F.R. §404.1527(d)(2); *see also* Soc. Sec. Ruling 96-2p, 1996 WL 374188 at *4; *Rogers*, 486 F.3d at 242 ("in all cases there remains a presumption, albeit a rebuttable one, that the opinion of a treating physician is entitled to great deference, its non-controlling status notwithstanding.").  For this reason, as well as the ALJ's additional errors explained above, the Government's decision to support the ALJ's decision was not substantially justified.

Accordingly, Plaintiff's Motion for Attorney Fees is well taken.

## C.    <u>Remaining Issue</u>

At the beginning of this case, in October 2008, Plaintiff executed "statement" explaining, "I, RITA BISHOP, hereby assign all rights to attorney fees obtained through the Equal Access to Justice Act (EAJA) to Horenstein, Nicholson & Blumenthal, and/or their representatives."  (Doc. #18, Exhibit A) (capitalization in original).  Plaintiff further acknowledged in her statement that "any payment for approved EAJA fees should be made payable to my attorney.  I understand that such payment is to be paid by the Government and is not to be paid from Social Security Benefits payable to me."  *Id*.

The EAJA instructs the courts to "*award to a prevailing party* ... fees and other expenses ... incurred by that party in any civil action..., including proceedings for judicial

6

review of agency action brought ... against the United States."  28 U.S.C. §2412(d)(1)(A).

In a recent social security case involving the Commissioner's payment of attorney fees under the EAJA, the Supreme Court held: "a §2412(d) fees award is payable to the litigant and is therefore subject to a Government offset to satisfy a pre-existing debt that the litigant owes the United States."  *Ratliff v. Astrue*, __U.S.__, 130 S.Ct. 2521, 2524, 177 L.Ed.2d 91 (2010); *see Bryant v. Commissioner of Soc. Sec.*, 578 F.3d 443, 447 (6th Cir. 2009)(same).

The Government asks this Court to consider, under *Ratliff*, that the Court should not require payment of EAJA fees directly to Plaintiff's counsel since this "may circumvent the Debt Collection Improvement Act."  (Doc. #17 at 118).  The Government notes that if EAJA fees are awarded, it intends to "evaluate the propriety of directing payment to [Plaintiff's] attorney pursuant to an assignment...."  *Id.* at 119.

Plaintiff argues, "in *Ratliff*, the Supreme Court did not reject the use of an assignment to permit payment of an EAJA award (minus any Federal debt owed) directly to Plaintiff's attorney."  (Doc. #18 at 122).  Plaintiff thus seeks an Order directing the Commissioner to pay the EAJA award directly to her counsel of record.  *Id.*

Although Plaintiff has assigned her EAJA award to her attorney (Doc. #18, Exhibit A), it is not known today whether she owes a debt to the United States.  In *Ratliff*, the Supreme Court recognized that historically the Commissioner paid EAJA fees directly to a prevailing plaintiff's attorney.  __U.S. at __, 130 S.Ct. at 2528-29.  The Court further noted that, based on the record before it, "the Government has since continued the direct

payment practice only in cases where the plaintiff does not owe a debt to the [G]overnment and assigns the right to receive the fees to the attorney." *Id*. at 2529 (internal quotation marks omitted).

Because it is not known in the present case whether or not Plaintiff owes a debt to the United States, "in light of *Ratliff*, ... it [is] a better practice is to simply award the EAJA fees directly to Plaintiff as the prevailing party and remain silent regarding the direction of payment of those fees.  It is not the duty of the Court to determine whether Plaintiff owes a debt to the [G]overnment that may be satisfied, in whole or in part, from the EAJA awards." *Preston v. Astrue*, unpubl. op., 2010 WL 3522156 at *2 (M.D. Fla. Sept. 8, 2010).  The Government retains the discretion and authority to determine whether Plaintiff owes a debt to it.  *Id*.  If no such unpaid debt exists, or if EAJA fees remain after a governmental offset, there appears no reason on the present record for the Government not to honor Plaintiff's assignment of EAJA fees to her attorney.  *Cf. Ratliff*, __U.S. at __, 130 S.Ct. at 2530 ("the litigant's obligation to pay her attorney is controlled not by the EAJA but by contract and the law governing that contract.")(Sotomayor, J., concurring).

Accordingly, in light of Plaintiff's assignment and the lack of information regarding whether she owes a debt to the United States, Plaintiff should be awarded attorney fees under the EAJA as a prevailing party, and no Order should issue regarding the direction such fees must be paid.

**IT IS THEREFORE RECOMMENDED THAT:**

8

1.     Plaintiff's Motion For Attorney Fees Under Equal Access To Justice Act, 28 U.S.C.§2412(d) (Doc. #13) be GRANTED;

2.     The Clerk of Court be directed to enter Judgment in favor of Plaintiff Rita Bishop and against the Commissioner of the Social Security Administration in the total amount of $3,849.05

3.     No Order should issue regarding the direction the Government must pay the EAJA award; and

4.     The case remain terminated on the docket of this Court.

September 29, 2010

                            s/ Sharon L. Ovington
                               Sharon L. Ovington
                         United States Magistrate Judge

9

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations.  Pursuant to Fed. R. Civ. P. 6(d), this period is extended to seventeen days because this Report is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(C), (D), (E), or (F).  Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections.  If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs.  A party may respond to another party's objections within fourteen days after being served with a copy thereof.

Failure to make objections in accordance with this procedure may forfeit rights on appeal.  *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn,* 474 U.S. 140 (1985).

10